**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | | |
|---|---|---|
| VIRGIL J. WERTS, Plaintiff, | ) | Civil Action No. 3:05-3203-MBS-BM |
| v. | ) | |
| COUNTY OF RICHLAND, a political subdivision of the State of South Carolina; ALVIN S. GLENN DETENTION CENTER; PRISON HEALTH SERVICES, INC.; RICHLAND COUNTY SHERIFF'S DEPARTMENT, Defendants. | ) | **REPORT AND RECOMMENDATION** |

This action was originally filed by the Plaintiff in the South Carolina Court of Commons Pleas, Fifth Judicial Circuit. Plaintiff was incarcerated at the Alvin S. Glenn Detention Center in Richland County South Carolina in October 2003, and claims that during his period of incarceration the Defendants violated his civil rights by failing to provide him with proper medical care. Plaintiff also asserts a claim for false arrest and imprisonment. Since Plaintiff's Complaint contains federal causes of action, it was removed to this Court by the Defendants on November 15, 2005.

The Defendant Prison Health Services, Inc. (PHS), filed a motion to dismiss and/or for summary judgment on June 30, 2006. The remaining Defendants filed a motion for summary judgment on July 19, 2006. Summary judgment "shall be rendered forthwith if the pleadings,





depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

At the time these summary judgment motions were filed, Plaintiff was represented by counsel. However, counsel was subsequently relieved by order of the Honorable Margaret B. Seymour, United States District Judge, and the file was referred to the undersigned for pretrial management. As the Plaintiff is now proceeding pro se, a Roseboro order was entered on October 13, 2006 advising Plaintiff of the importance of a motion for summary judgment, and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motions may be granted, thereby ending his case. However, notwithstanding the specific notice and instructions contained in the Court's Roseboro order, Plaintiff has failed to file any response to the pending motions for summary judgment, which are now before the Court for disposition.[1]

**Discussion**

**I.**

Plaintiff alleges in his first cause of action that the Defendants were deliberately

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. The Defendants have filed motions to dismiss and for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.





indifferent to his serious medical needs in violation of his federally protected constitutional rights. This claim is asserted under 42 U.S.C. § 1983, which is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973).

Plaintiff alleges in his Complaint that he was arrested on October 22, 2003 and was taken to the Alvin S. Glenn Detention Center. Plaintiff alleges that he advised the Defendants that he had "numerous prescriptions" and was in need of immediate medical attention, but that his requests for medical attention were ignored. Plaintiff alleges that as a result of the Defendants' failure to provide medical care, he suffered a seizure and/or other injuries to his emotional and psychiatric state. Plaintiff alleges he was released from the Detention Center on October 27, 2003.

In support of summary judgment on this claim, the Defendants Richland County, Alvin S. Glenn Detention Center, and Richland County Sheriff's Department, have provided an affidavit from Christopher Montjoy, who attests that he is the Lieutenant in the Professional Standards Division at the Alvin S. Glenn Detention Center, a position he held during the time period relevant to Plaintiff's Complaint. Montjoy attests that the Detention Center, which is under the jurisdiction of Richland County, South Carolina, provided medical services to inmates through a contract between PHS and Richland County. Under this contract, PHS was responsible for all medical decisions including, but not limited to, the care, treatment, and dispensing of medication to the inmates housed at the Detention Center, and any requests by an inmate for medical attention would be forwarded to PHS employees to review and take necessary action.

Montjoy further attests that Plaintiff was booked into the Detention Center on





October 22, 2003, and released on October 30, 2003. See also Montjoy Affidavit, Exhibit A. Montjoy attests that, during this booking process, Plaintiff indicated that he had been treated in the past for a heart and lung condition, high blood pressure, depression and multiple other physical infirmities. Plaintiff further stated that he was on multiple medications and had experienced withdrawal seizures from his medications. Montjoy attests that this information was relayed to the medical staff, and that the medical staff cleared Plaintiff and he was placed in the general population. See also Montjoy Affidavit, Exhibit B. Montjoy attests that on or about October 27, 2003, at 12:30 a.m., a Detention Center officer saw the Plaintiff jump up from his bunk, scream, and then fall to the floor. Detention Center staff immediately called a "code blue", and one of the nurses attended to the Plaintiff at that time. EMS was summoned and Plaintiff was taken to Richland Memorial Hospital. Montjoy attests that Plaintiff was returned to the Detention Center around 11:15 a.m., examined by the medical staff, and cleared to return to his cell. See also, Montjoy Affidavit, Exhibit C.

Montjoy attests that Plaintiff was treated according to the policies and procedures of the Detention Center, and that the Detention Center staff made the appropriate and necessary referrals to the PHS staff and acted in accordance with the contractual obligation between PHS and the Detention Center. See generally, Montjoy Affidavit, with attached Exhibits.

The Defendant PHS has submitted an affidavit from Don Deppe, who was employed as a nurse by this Defendant at the Detention Center in October 2003. Deppe attests that he saw the Plaintiff on October 23, 2003 at 10:45 p.m., after he had been booked into the Detention Center. Deppe attests that Plaintiff gave a history of taking medications but could not name the medications he was on. Deppe attests that Plaintiff's blood pressure was 180/110, which is why he wrote





"hypertension" on the medical chart. See Defendant PHS' Exhibit D, PHS page no. PHS02. Deppe attests that Plaintiff also gave a history of a stroke in the past year and a CMS disorder, but did not advise that he had a seizure disorder. Deppe attests that if the Plaintiff had advised him that he had seizure disorder, he would have written that down.

Deppe further attests that Plaintiff advised him that he had not had any of his medications for the last three days, nor did he advise him [Deppe] that he was on Tegretol[2]. Deppe attests that because of the Plaintiff's blood pressure reading and his history of multiple medications, he placed Plaintiff on sick call to be seen by the physician. Finally, Deppe attests that he is familiar with patients who have seizure disorders and knows how to treat same, that he understands the necessity of medications for such a disorder, and that if Plaintiff had advised him that he had such a disorder, he [Deppe] would have contacted the on-call physician to obtain medications for him. See generally, Deppe Affidavit, Defendant PHS' Exhibit E.

An affidavit from Henriett Hall has also been submitted, who attests that she is a registered nurse, and is a former medical supervisor at the Detention Center, where her duties included training and supervision of medical division employees in addition to patient care. Hall attests that she retired from the position of captain of the medical division in 2002, and that she has reviewed Plaintiff's medical records as an expert witness and finds that the medical care and treatment provided to the Plaintiff by the medical staff of Prison Health Services at the Detention Center met the standard of care, and that no action or inaction by the staff caused Plaintiff any harm.

Plaintiff apparently had some type of seizure on October 27, 2003, and was sent to Richland Memorial Hospital, following which he was returned to the Detention Center with a

[2]Tegretol is an anticonvulsant medication. Physician Desk Reference, 61 ed. 2007, p. 2295.





prescription for seizure medications. Hall attests that Plaintiff's medical record reflect that he was seen by medical staff on admission on October 27, 2003 after he had been treated at the Palmetto Richland Hospital. Hall attests that Plaintiff's records further reflect that he was seen by a physician (Dr. Eskridge) on October 30, who ordered further treatment, but that no residual problems from Plaintiff's seizure of October 27 were noted. Hall attests that Plaintiff's past medical and mental health records reflect that he had a longstanding history of anxiety, depression and neck pain, but that his medical records from 2002 and early 2003 do not show any past history of seizures, with one physician, Dr. Craig Maylath, questioning on March 30, 2003 why Plaintiff was on Tegretol. Hall also attests that Plaintiff's records reflect that he did not provide PHS employees or jail personnel with any history of seizure disorder, and that it is imperative for patients to provide healthcare providers with adequate medical information in order for the provider to be able to render appropriate care. Hall attests that, while Plaintiff did have an elevated blood pressure on admission to the jail, his condition was not serious and could wait to be treated by a physician, especially in light of the fact that Plaintiff gave a history of no medications for three days prior to his incarceration. Hall attests that, based on her review of the records, the affidavits, and her skill, training and expertise as a nurse, Plaintiff's seizure was not caused by any inactions of the medical staff at the jail, nor did Plaintiff's seizure cause him any permanent injury. See generally, Hall Affidavit; Defendant PHS' Exhibits C-G.

Defendant PHS has also provided an affidavit from Dr. John Brown, who has reviewed Plaintiff's medical records as an expert witness. Brown attests that Plaintiff's medical records and the affidavits reflect that he was seen by medical staff at the jail on October 27, 2003 after he had been treated at Palmetto Richland. Plaintiff had been returned to the Detention Center





from the hospital on that date with a prescription for seizure medications. Plaintiff was thereafter seen by Dr. Eskridge on October 30, who ordered further treatment.

Brown attests that Plaintiff's medical records reflect that he had a longstanding history of anxiety, depression and neck pain, but that his records from 2002 and early 2003 did not reveal any past history of seizures, nor did Plaintiff provide PHS employees or jail personnel any information about a history of seizure disorder. Brown attests that, while Plaintiff's medical records do reflect that he had an elevated blood pressure on his admission to the jail, this condition was not serious and could wait to be treated by a physician. Brown attests that Plaintiff's medical records show that the medical care and treatment he received while incarcerated at the Detention Center met the medical standard of care, that Plaintiff's seizure was not caused by any inactions by the PHS staff, nor did Plaintiff's seizure cause any permanent injury. See generally, Brown Affidavit. See also Defendant PHS' Exhibit D-G.

As noted, Plaintiff has failed to respond to the Defendants' motions for summary judgment, and has therefore presented no evidence to support the unverified claims[3] made in his Complaint or to counter the affidavits and other exhibits submitted by the Defendants. Based on the evidence before the Court, the undersigned is constrained to agree that all of the named Defendants are entitled to summary judgment on Plaintiff's constitutional claim relating to his medical care.

First, the Alvin S. Glenn Detention Center is a building, and inanimate objects are

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, in this case the Plaintiff was initially represented by counsel and filed an *unverified* Complaint. Therefore, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case.





not subject to suit under § 1983. Cf. Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969) [California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983]; Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D.Pa. 1976); see generally Tyler v. Sullivan, No. 95-1232, 1996 WL 195295 at **1 (10th Cir. Apr. 22, 1996) ["The [district] court dismissed the detention facility as a defendant, finding that the facility, a building owned and operated by the county, is not a person or legally created entity capable of being sued."]; Preval v. Reno, 57 F. Supp.2d 307, 310 (E.D. Va. 1999) ["[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."] aff'd in part, modified in part on other grounds, vacated in part on other grounds, 203 F.3d 821 (4th Cir. 2000); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ["Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."]. Therefore, the Alvin S. Glenn Detention Center is entitled to dismissal as a party Defendant in this case.

Second, the Richland County Sheriff's Department is considered a state agency for purposes of a § 1983 claim, and therefore normally has absolute immunity from suit in federal court under the Eleventh Amendment to the United States Constitution. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984); Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989); see Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996) [sheriff's departments are considered state agencies for purposes of a § 1983 claim]; Gulledge v. Smart, No. 88-2610, 1989 WL 69302 at **1 (4th Cir. June 19, 1989); Bellamy v. Borders, 727 F.Supp. 247, 248-250 (D.S.C. 1989); Coffin v. South Carolina Dep't of Social Services, 562 F.Supp. 579, 583-585 (D.S.C. 1983); Belcher v. South Carolina Board of Corrections, 460 F.Supp. 805, 808-809 (D.S.C. 1978). However, since it was the Defendants, including the Defendant Richland County Sheriff's





Department, who removed this case to federal court, the Sheriff's Department's immunity from suit in this Court may have been waived. See Lapides v. Bd. of Regents of University System of Georgia, et al., 535 U.S. 613 (2002); but see Stewart v. North Carolina, et. al, 393 F.3d 484 (4th Cir. 2005). Nevertheless, to proceed with a lawsuit under § 1983, a named Defendant must still be a "person" amenable to suit under that statute, and the Richland County Sheriff's Department is not a "person" amenable to suit under § 1983. Cone v. Nettles, 417 S.E.2d 523, 524 (S.C. 1992). Further, even if Plaintiff had named a proper party Defendant, Plaintiff has presented no evidence whatsoever to show that the Richland County Sheriff or any of his deputies played any role in the medical care or treatment received by the Plaintiff at the Detention Center. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ["liability...must be based on the personal involvement of the defendant"], cert. denied, 522 U.S. 1154 (1999). To the contrary, the evidence before the Court shows that the Detention Center is under the jurisdiction and control of Richland County, and not of the Sheriff or the Sheriff's Department. Therefore, the Defendant Richland County Sheriff's Department is entitled to dismissal as a party Defendant under Plaintiff's deliberate indifference claim.

As for the Defendant Richland County, this entity is subject to suit under § 1983. *Cf.* Newport v. Fact Concerts, 453 U.S. 247, 249 (1981) [ Local governments subject to suit under § 1983], citing Monell v. Dep't of Social Services, 436 U.S. 658 (1978). However, in order to maintain this claim against Richland County, Plaintiff must produce evidence to show not only that his constitutional rights have been violated, but that these violations were the result of Richland County's policies or customs, or flowed from edicts or acts which may fairly be said to represent official county policy. Further, if Plaintiff's claim is that the actions complained of were pursuant





to a custom of the county, rather than an actual policy, Plaintiff may need to make an additional showing that the County knew about the unlawful custom and condoned it. See Higgins v. Correctional Medical Services of Illinois, Inc., 8 F.Supp. 2d 821, 831 (N.D. Ill. 1998); Moore v. Jackson, 123 F.3d 1082, 1087 (8th Cir. 1997); Moore v. Mercier, No. 96-1445, 1997 WL 529994 at **2 (8th Cir. Aug. 7, 1997); Smith v. Prince George County Md., No. 96-2644, 1998 WL 398786 (4th Cir. July 9, 1998). See also Monell v. Dep't of Social Services, 436 U.S. 658, 690-691, 694 (1978); Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988) (citing Monell, 436 U.S. at 692-694); Greensboro Professional Firefighters, et al. v. City of Greensboro, 64 F.3d 962, 966-967 (4th Cir. 1995), (citing Spell, 824 F.2d at 1391); Addison v. County of Charleston Magistrate Office, No. 06-3308, 2006 WL 3813695 at *3 (D.S.C. Dec. 27, 2006).

> [A] plaintiff must show that a municipality itself has somehow violated federal rights. The clearest way to make such a showing is when the municipality or one of its agencies has adopted an unconstitutional policy, ordinance, regulation or decision. Absent a specific policy, liability must be premised on a municipal custom or usage so prevalent that it is the equivalent of policy. A single act or isolated incident does not provide causation sufficient to hold a county or municipality liable on the basis of custom or usage.

Nelson v. Strawn, 897 F.Supp. 252, 259 (D.S.C. 1995) aff'd in part, vacated in part on other grounds,

78 F.3d 579 (1996); see also Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994).

The evidence presented to the Court fails to establish a claim by the Plaintiff against this Defendant under this standard. To the extent a policy or custom of Richland County is at issue in this case, there is no evidence that any such policy or custom violates the Constitution. To the contrary, it is clear in the evidence that it is the policy of Richland County, through a contract with PHS, to provide healthcare for inmates in the Detention Center. Plaintiff has provided no evidence,





or even argument, to show that the Defendant Richland County's policy, as provided through its contract with PHS, with regard to the providing of healthcare violates his constitutional rights, or indeed that any employee of Richland County played any role in the amount or quality of medical care provided to him. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]. Therefore, Richland County is entitled to dismissal as a party Defendant under this claim.

Finally, the undersigned finds and concludes that Plaintiff has also failed to set forth a viable constitutional claim against the Defendant Prison Health Services, Inc. PHS is, itself, not an entity that is subject to suit under § 1983. See Harding v. Green, 27 Fed.Appx. 173, 176 (4th Cir. 2001) ["The medical department of a prison may not be sued, because it is not a person within the meaning of § 1983"] (citing Fischer v. Cahill, 474 F.2d 991 (3d Cir. 1973). As a contract entity, PHS' employees would be subject to suit in their individual capacities under § 1983. Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir. 1994), applying West v. Atkins, 487 U.S. 52 (1988). However, no such individual employees have been named. Further, even if a proper party Defendant was before this Court on this claim, Plaintiff has failed to present any evidence to establish his claim. In order to avoid summary judgment on this claim, Plaintiff must present sufficient evidence to show a material issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir.





1975).[4] Whether or not Plaintiff was provided with the care he desired is immaterial. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) [the Constitution "does not guarantee to a prisoner the treatment of his choice"]; see Brown v. Thompson, 868 F.Supp. 326, 329-330, n. 2 (S.D.Ga. 1994).

The only evidence before the Court with respect to Plaintiff's medical care shows that he received a medical screening upon his admission to the Detention Center, that he received medical care on October 27, 2003 after suffering some type of seizure, and that he was transported by EMS to Richland Memorial Hospital, where he received additional treatment. When Plaintiff was subsequently released by the hospital and returned to the Detention Center, he was again examined by medical staff and cleared to return to his cell. Defendants have provided affidavits from the nurse of the Detention Center, as well as two individuals presented as experts (to which Plaintiff has not objected), all of whom attest to the type and quality of care Plaintiff received at the Detention Center. Plaintiff has provided no evidence to contest any of the information or statements contained in these affidavits, nor has he provided any medical evidence to show what caused his seizure on October 27, how serious that seizure was, or whether there were any problems or deficiencies in the treatment of his condition. Rather, he has presented only conclusory allegations in his Complaint that he was provided with improper or inadequate medical care. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient

[4] As a pretrial detainee, Plaintiff's conditions of confinement while incarcerated at the Alvin S. Glenn Detention Center are evaluated as to whether these conditions constituted "punishment" under the due process clause of the Fourteenth Amendment. Although the medical standard remains "deliberate indifference to serious medical needs," the Eighth Amendment is used to evaluate conditions of confinement only for those convicted of crimes. Bell v. Wolfish, 441 U.S. 520, 535, n.16 (1979); Ingraham v. Wright, 430 U.S. 651, 671-672, n.40 (1977); Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993); Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987); Hill v. Nicodemus, 979 F.2d 987, 991-992 (4th Cir. 1992).





to maintain claim].

Plaintiff's failure to provide any evidence to counter, or even to respond to, Defendants' affidavits and other exhibits is fatal to his claim. Estelle, 429 U.S. at 105; Harris v. Thigpen, 941 F.2d 1495, 1505-1507 (11th Cir. 1991); see Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], (quoting Farmer v. Brennan, 511 U.S. at 837); *cf.* Dias v. Vose, 865 F.Supp. 53, 59 (D.Mass 1994) [Physician's failure to send inmate to hospital with emergency ward, while possibly negligent, was not deliberate indifference to a serious medical need, even though delay in appendicitis surgery caused complications, absent showing that physician acted with a culpable state of mind and intention to inflict pain.], aff'd 50 F.3d 1 (1st Cir. 1995).

Plaintiff may, of course, have a common law claim for medical malpractice with regard to his treatment, and he has in fact in his second cause of action asserted a state law claim under the South Carolina Tort Claims Act. However, negligent or incorrect medical treatment is not actionable under § 1983. Estelle, 429 U.S. at 106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); Ruefly v. Landon, 825 F.2d 792, 793-794 (4th Cir. 1987). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. Section 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989); Daniels v. Williams, supra [Jailers may owe a special duty of care to those in their custody under state tort





law,...but...we reject the contention that the Due Process Clause of the Fourteenth Amendment embraces such a tort law concept]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Paul v. Davis, 424 U.S. 693, 697 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal]. Therefore, the fact that Plaintiff may have some type of state law claim he could pursue does not save his federal claim from dismissal, and his first cause of action, asserting deliberate indifference by the named Defendants to his serious medical condition in violation of his constitutional rights, should be dismissed.

**II.**

In his third cause of action, Plaintiff asserts a claim for illegal arrest without probable cause in violation of his constitutional rights. Plaintiff alleges in his Complaint that he was involved in a motor vehicle accident on October 22, 2003, following which he returned to his residence. Plaintiff alleges that deputies of the Richland County Sheriff's Department subsequently arrived at Plaintiff's residence and administered a blood alcohol test to him, that his blood alcohol level was found to be within the legal limit for driving in South Carolina, but that he was nevertheless arrested and issued a summons for driving under the influence and transported to the Detention Center. See Complaint, ¶ 8. No other information concerning Plaintiff's arrest is provided in the Complaint.

An arrest is constitutional as long as the arresting officer is authorized by state and/or municipal law to effect a custodial arrest for a particular offense. United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir. 1989). Further, in assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest; Taylor v. Waters, 81 F.3d





429, 434 (4th Cir. 1996); and whether or not an arrestee is ultimately found to be guilty or innocent on the criminal charge itself is not the issue. White v. Coleman, 277 F.Supp. 292, 297 (D.S.C. 1967). However, none of the Defendants have submitted any evidence concerning Plaintiff's illegal arrest claim, nor has the Plaintiff. Therefore, the undersigned has no evidentiary basis to reach a conclusion on the merits of Plaintiff's illegal arrest claim.[5]

Nevertheless, this claim is still subject to dismissal for the reasons previously stated in Section I of this Report and Recommendation, supra. The Defendant Alvin S. Glenn Detention Center is not a party subject to suit for a constitutional claim under § 1983. Brooks, 722 F. Supp. at 1301 ["Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."]. Neither the County of Richland, which operates the County Jail, or Prison Health Services, Inc., which provides medical services at the County Jail, had anything to do with Plaintiff's arrest by his own admission as contained in the allegations of his Complaint. Therefore, they are entitled to dismissal as party Defendants under this claim. Gomez v. Toledo, 446 U.S. 635, 640 (1980) [In order to state a cause of action under § 1983, a plaintiff must allege that the defendant deprived him or her of a federal right]; see Barren, 152 F.3d at 1194 ["liability...must be based on the personal involvement of the defendant"], cert. denied, 522 U.S. 1154 (1999); Wilson v. Cooper, 922 F.Supp. 1286, 1293 (N.D.Ill. 1996). See also Horton v. Marovich, 925 F.Supp. 540 (N.D.Ill 1996) ["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the

---

[5]While the allegations of Plaintiff's Complaint are not evidence, his own allegations are that he apparently left the scene of an accident and had been drinking (although he further alleges that he was within the legal limit for driving), both of which would cast doubt on his illegal arrest claim. See Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002) ["to prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating [the law]"].





official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].

The only remaining Defendant is the Richland County Sheriff's Department which, as previously discussed herein, supra, is not amenable to suit under § 1983, as it is not a "person" for purposes of that statute. Cone v. Nettles, supra. Even if Plaintiff had named the Sheriff of Richland County, Leon Lott, as the party Defendant, and not the Department itself, this claim would still be subject to dismissal because there are no allegations in the Complaint to connect the Sheriff of Richland County with the actions of any sheriff's deputies who may have been involved in Plaintiff's arrest,[6] and the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). Because Plaintiff failed to allege specific wrongdoing on the part of Sheriff Lott (assuming he had been named, or was intended to be the party named, as the party Defendant), he may not be held liable for the acts of his deputies absent an official policy or custom for which he was responsible which resulted in illegal action. See generally, Monell, 436 U.S. at 694; Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubby v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)).

---

[6]Plaintiff has named no individual sheriff's deputies as party Defendants in this case, and indeed the Complaint does not even identify the individuals who arrested him.





Plaintiff has made no claim of any official policy or custom of the Defendant Lott which resulted in his alleged illegal arrest, nor is there any evidence of any such official policy or custom. Therefore, even if Plaintiff had named Richland County Sheriff Leon Lott, individually, as a party Defendant, rather than the Richland County Sheriff's Department, he would be entitled to dismissal as a party Defendant. Plaintiff's third cause of action for illegal arrest should be dismissed.

**III.**

Plaintiff's sole remaining claim is his state law medical claim asserted under the South Carolina Tort Claims Act. When federal claims presented in a case which has been removed to federal court from state court are dismissed, the case should be remanded to state court for resolution of any remaining state law claims under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See also In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Mellon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996). This will allow the state courts to deal with this solely state law issue.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motions for summary judgment with respect to Plaintiff's first and third causes of action be **granted**, and that those claims be **dismissed**, with prejudice. It is further recommended that Plaintiff's remaining second cause of action, asserting a state law claim under the South Carolina Tort Claims Act, be **remanded** back to





state court for disposition.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

February 7, 2007





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).



